IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROBERT L. LOSH and LINDA S. LOSH | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Docket No.: 3:20-cv-339 |
| | ) | |
| WYNDHAM VACATION RESORTS, INC.; | ) | Jury Demand |
| WYNDHAM REWARDS, INC. TAMI MCMAHAN; | ) | |
| JASON ROY SMITH; ERIC MCKINLEY; | ) | |
| AND JOHN DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**COMPLAINT**
_____

Come Plaintiffs, Robert L. Losh and Linda S. Losh (hereinafter "Plaintiffs"), and for their Complaint against Wyndham Vacation Resorts, Inc.; Wyndham Rewards, Inc.; Tami McMahan, Jason Roy Smith, and John Does 1-100 (hereinafter referred to jointly as "Wyndham" or "Defendants") state as follows:

## PARTIES

1.      Plaintiffs reside in the State of Pennsylvania.

2.      Plaintiffs purchased Wyndham timeshares and signed a timeshare contract in the State of Tennessee, and other states.

3.      Plaintiffs purchased Wyndham timeshare resort vacation units with some units located at Wyndham resorts in Tennessee.

4.      Defendant Wyndham Vacation Resorts, Inc. ("WVR") is a Delaware corporation with its principal place of business at 6277 Sea Harbor Drive, Orlando, FL 32821. WVR

is registered to conduct business in Tennessee, with its registered agent as Corporate Creations Network, Inc., 205 Powell Place, Brentwood, Tennessee 37027-7522.

5.     Defendant Wyndham Rewards, Inc. ("WRI") operated Wyndham Rewards, a mechanism regarding timeshare maintenance fees, as part of Defendants' transaction(s) with Plaintiffs. Its principal place of business is 22 Sylvan Way, Parsippany, NJ 07054. It is a Delaware corporation operating in the State of Tennessee. Its registered agent is Corporate Creations Network, Inc., 205 Powell Place, Brentwood, Tennessee 37027-7522.

6.     Defendants Tami McMahan and Jason Roy Smith agent(s) or person(s) employed or associated with Wyndham. These Defendants are believed to reside in the State of Tennessee.

7.     Defendant John Does 1-100 ("Does") are any other agent(s) or person(s) employed or associated with Wyndham. Plaintiffs reserve the right to amend this Complaint upon investigation and discovery of additional agents, employees, or associates of Wyndham. Should Plaintiffs find information on any John Does throughout this lawsuit, Plaintiffs reserve the right to amend this Complaint and add them as Defendants.

8.     It is unclear to Plaintiffs whether Defendants' employees are also employees of one or more of the other Defendants and/or vice versa. Therefore, Plaintiffs will refer to all Defendants jointly as "Wyndham."

## JURISDICTION AND VENUE

9.      This Court has jurisdiction and venue over this Complaint as a substantial part of the events or omissions giving rise to this cause of action accrued in the State of Tennessee.

10.     Venue is proper in this Court in that events or omissions giving rise to this cause of action accrued in Sevier County, Tennessee.

11.     Venue is also proper in this Court in that all Defendants have places of business in Sevier County, Tennessee.

12.     Defendants WVR and WRI are registered to do business in Tennessee.

13.     Wyndham transacted business with Plaintiffs within the State of Tennessee.

14.     The acts and omissions made the subject of this Complaint occurred within the State of Tennessee while Wyndham was transacting business in the state; therefore, Wyndham has submitted to this jurisdiction.

15.     Tami McMahan, Jason Smith, and John Doe(s) were employees/agents of Wyndham who conducted business in the State of Tennessee.

16.     Wyndham is vicariously liable for the fraudulent, intentional and/or negligent acts or omissions of Defendants John Does by the doctrine of respondent superior.

17.     Defendants have "continuous and systematic" contacts with the State of Tennessee sufficient to establish personal jurisdiction.

18.     WVR owns and/or operates timeshare properties and/or other resorts located in Tennessee.

19.     Wyndham has several offices located in Tennessee.

20.     Wyndham employees regularly communicate with Tennessee customers to sell and market timeshare interests.

21.     Wyndham conducts large scale marketing and sales activities within the State of Tennessee, including but not limited to direct mail, email, telemarketing, Internet distribution channels, travel agencies and other partners.

22.     Plaintiffs purchased Wyndham timeshare properties/points and were induced into signing timeshare documents in the State of Tennessee, among other states.

23.     Plaintiffs purchased Wyndham timeshare properties/points redeemable for vacation units located at Wyndham resort properties located in Tennessee.

24.     This is an action for damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

## FACTS

25.     WVR is part of Wyndham Vacation Ownership. Which is the world's largest timeshare company.

26.     WVR markets, sells and finances vacation interests, provides property management services to property owners' associations, and develops vacation ownership resorts.

27.     Wyndham is the world's largest vacation ownership business, as measured by the number of vacation ownership resorts, individual vacation ownership units, and owners of vacation ownership interests ("VOIs").

28.     Wyndham develops, markets and sells VOIs, provides consumer financing to owners, and manages properties through its three primary consumer brands: Wyndham Vacation Resorts, WorldMark by Wyndham, and Wyndham Vacation Resorts Asia Pacific.

4

29.    Tami McMahan, Jason Smith and John Does l-100 were employees and/or agents of Wyndham who assisted potential and current customers with purchasing, trading, and/or upgrading timeshare properties, timeshare points and/or vacation club points.

30.    Tami McMahan, Jason Smith and John Does 1-100 were hired, trained and supervised by Wyndham.

31.    Wyndham trains its employees on how to sell timeshares.

32.    Wyndham trains its employees on what to say when discussing timeshares with potential buyers.

33.    Wyndham has policies and procedures regarding the sale of timeshares.

34.    Wyndham's employees and representatives are made aware of these policies and procedures.

35.    Some of Wyndham's policies and procedures regarding the sale of timeshares are not in writing.

36.    Some of Wyndham's policies and procedures regarding the sale of timeshares are taught to employees and representatives through on-the-job training.

37.    Wyndham is aware of the training methods used to train their employees and representatives.

38.    Wyndham is a business and, therefore, has a common law duty to convey honest information to potential customers.

39.    Businesses are obligated to deal truthfully with potential customers.

40.     Some of Wyndham's policies, procedures, and training lead its sales people, and John Does specifically, to intentionally, negligently or fraudulently mislead, misrepresent or omit facts to its potential and current customers.

41.     Tami McMahan, Jason Smith and John Does 1-100 spoke with Plaintiffs regarding purchasing, trading, and/or upgrading Wyndham timeshare properties and/or points.

42.     Plaintiffs own Wyndham-related timeshare or vacation club membership points and/or properties, having been pressured into multiple upgrades over the last few years alone.

43.     Plaintiffs, with the knowledge, expectation, and encouragement from Wyndham, have traded in their Wyndham timeshare properties and/or points from time to time in exchange for other Wyndham timeshare properties, points, and/or benefits.

44.     After encouraging and inducing Plaintiffs to purchase these timeshare properties and/or timeshare points, Wyndham has systematically eliminated benefits that directly impact Plaintiffs' use to their detriment and continues to do so.

45.     Plaintiffs purchased timeshare properties/points from Defendants while at Defendants' offices and/or resorts located in Tennessee, among other states.

46.     Defendants advertised the timeshares sold to Plaintiffs with intent not to sell them as advertised.

47.     Wyndham's conduct relating to their sales presentations constituted a "bait and switch" tactic by advertising items to lure the consumer, then inducing the consumer to buy different and more expensive items.

6

48.     Defendants made false or misleading statements of fact concerning the reasons for, existence of, or amounts of timeshare price reductions for timeshares being sold to Plaintiffs.

49.     Intentionally and/or negligently, Plaintiffs were falsely told they were attending an owner education events or update meetings, which were in fact extremely lengthy, high-pressure sales presentations.

50.     Intentionally and/or negligently, Plaintiffs were told falsely by Defendants that the sales offer would expire if Plaintiffs did not purchase that day.

51.     During this multi-hour-long, high pressure sales presentation, Plaintiffs were not allowed to leave under threat that the "one-day-only" deal would disappear.

52.     Such high pressure by Wyndham confused Plaintiffs, causing them to misunderstand what they were purchasing and the actual terms and conditions of the purchase.

53.     Intentionally and/or negligently, Wyndham sales agents omitted or misrepresented to Plaintiffs the facts regarding the price, costs, expenses, and/or values of the Wyndham timeshare properties/points being sold to Plaintiffs.

54.     Intentionally and/or negligently, the timeshare properties/points purchased by Plaintiffs were falsely represented by Wyndham's employees, agents, and/or representatives, including Tami McMahan, Jason Smith and John Does 1-100, as a sound financial decision.

55.     Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that the timeshare properties/points Plaintiffs were purchasing were more valuable than the previous one.

56.    Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that the timeshare would increase in value and could be sold at a profit and/or be a sound investment for their children to inherit.

57.    Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that they could refinance with their own bank to get a lower interest rate.

58.    Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that Plaintiffs would be able to vacation anywhere at any time; however, desired reservations were never available or extremely limited and difficult to secure.

59.    Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that the timeshare could be rented to pay for maintenance fees and/or cover the mortgage.

60.    Intentionally and/or negligently, Plaintiff was falsely told by Defendants that the timeshare could be rented to make additional income.

61.    Wyndham unfairly competed with Plaintiffs.  In addition to selling timeshare interests, Defendants also openly marketed and rented units at their facilities to the public at large.

62.    Defendants do not require assessment payments or maintenance fees from the public, and compete against owners of timeshare interests for usage of the facilities.

63.    Defendants did not disclose to Plaintiffs that they would be competing against the public at large.

64.    Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that the points program offered by Defendants' credit card was greater than it was in reality.

65.    Among other misrepresentations, when induced to upgrade, Plaintiffs were afforded a credit in the amount of their so called "equity" under an existing timeshare;

however, this amount constituted a false and fraudulent statement for the sole purpose of convincing Plaintiffs to increase the ownership and to incur further indebtedness and monetary obligations to Defendants.

66.    Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that purchasing enough points to be eligible for The Pathways Program would require Defendants to buy the timeshare back if Plaintiffs were not happy with the purchase.

67.    Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that Defendants right of first refusal was, in fact, a buyback program.

68.    Intentionally and/or negligently, Plaintiffs were not told by Defendants all of the terms and conditions of the Pathways program. Specifically, Defendants failed to inform Plaintiffs that Defendants have no obligation to buyback the Timeshare.

69.    Intentionally and/or negligently, Plaintiffs were falsely told by Defendants that their sales representative would be their personal representative and help rent the timeshare and make them reservations; however, this "personal representative" or "Wyndham Buddy" never returned calls after the sale was made.

70.    Plaintiffs were not given the opportunity to discuss the deal amongst themselves or to consult outside legal or financial counsel.

71.    Plaintiffs reasonably relied on Defendants' misrepresentations and/or omissions in making their decision to purchase timeshare properties/points with Wyndham.

72.    Plaintiffs were not given the opportunity to discuss their finances and decisions with each other or anyone else.

73.    Plaintiffs felt intense pressure from Defendants to purchase Wyndham timeshare properties/points.

74.     Plaintiffs were forced to make pressured and hurried decisions by Defendants.

75.     Wyndham salespeople, including Tami McMahan, Jason Smith and John Does, would get angry and demeaning toward Plaintiffs if Plaintiffs wanted to walk away or take time to think about their decisions.

76.     Based upon the above-referenced misrepresentation and omissions, as well as other false representations, Plaintiffs were coerced into purchasing timeshare properties/points.

77.     These sales tactics are used company-wide with the knowledge, endorsement, and encouragement of senior management.

78.     Wyndham's deceptive tactics are part of its corporate philosophy to make every sale at any cost.

79.     Wyndham's corporate philosophy is pervasive and drives the need for the use of these sales tactics.

80.     Unbeknownst to Plaintiffs, Wyndham sold Plaintiffs timeshare properties/points at hugely inflated prices, and failed to inform Plaintiffs.

81.     Unbeknownst to Plaintiffs, Wyndham timeshare properties/points are an illiquid asset with no aftermarket, making it nearly impossible for Plaintiffs to resell their Wyndham timeshare properties/points, and Defendants failed to inform Plaintiffs.

82.     Plaintiffs were interested in selling their Wyndham timeshare properties/points but found there was no market to purchase them, and Defendants failed to inform Plaintiffs.

83.     Plaintiffs were told false statements/misrepresentations by Wyndham to induce the purchase of Wyndham timeshare properties/points.

84. Plaintiffs signed the Wyndham timeshare contracts because of being misled, pressured, and/or bullied into signing.

85. Each Wyndham timeshare contract closing required Plaintiffs to sign and/or initial a multitude of separate contracts and related documents.

86. At all relevant times referenced herein, Wyndham has adopted uniform and standardized contract forms that Plaintiffs are not allowed to change or negotiate. These contract forms are presented by Wyndham on a take it or leave it basis. These uniform and standardized contract forms are common practices, procedures, and representations in connection with its timeshare business, which are the basis for this action.

87. Plaintiffs were not provided sufficient opportunity by Defendants to read through the Wyndham timeshare contracts and other documents.

88. Defendants rushed Plaintiffs through the execution of each timeshare contract and other documents, either failing completely to review or inadequately reviewing such important documents as Purchase Agreement, Contract of Sale, Truth in Lending Disclosure Statement, and Right of Rescission Disclosure.

89. Defendants rushed Plaintiffs to sign documents without reading them or consulting legal or financial counsel.

90. Defendants presented the contracts and closing documents in such a way as to deprive Plaintiffs the opportunity to understand fully and adequately all the terms of the agreement.

91.     Defendants presented disclosure and waiver documents, such as a Buyer's Acknowledgement, in such a way as to deprive Plaintiffs the opportunity to understand fully and adequately all the disclosures and waivers.

92.     Defendants did not describe the closing documents to Plaintiffs.

93.     Plaintiffs were deprived the opportunity to make knowing and voluntary decisions to enter into valid contracts.

94.     Defendants failed to adequately inform Plaintiffs of the rescission deadline and/or advised Plaintiffs that they could not rescind the contract.

95.     Plaintiffs had extreme difficulty booking reservations and found the condition of the properties to be in terrible run-down condition, often with some of the facilities completely closed.

96.     Intentionally or negligently, Defendants omitted or failed to inform Plaintiffs of the information and facts described above.

## COUNT I

## FRAUD

97.     Plaintiffs repeat and re-aver the allegations in paragraphs 1 through 96 as if fully set forth herein.

98.     As detailed above, Defendants fraudulently suppressed and failed to disclose material facts and intentions to Plaintiffs.

99.     Defendants sold Plaintiffs Wyndham timeshares while knowing and failing to disclose material facts.

100.    As detailed above, Defendants suggested material facts as true, which were in fact false.

101. Defendants knew or should have known that the above facts were not true.

102. Defendants made positive statements about the timeshare properties/points Plaintiffs were purchasing when Defendants knew information that did not justify their making of the statements.

103. The above misrepresentations and omissions were material facts to the transaction.

104. The above misrepresentations and omissions were made by Defendants with the knowledge that the facts were false.

105. In the alternative, the above misrepresentations were made without sufficient knowledge on the subject to justify a representation about the fact.

106. The above misrepresentations and omissions were made by Defendants with the intent to encourage Plaintiffs to act and rely upon them.

107. The above misrepresentations and omissions by Defendants caused Plaintiffs to act in reliance upon the representations and omissions to their detriment.

108. Without the benefit of the suppressed information, Plaintiffs reasonably acted to their detriment and suffered economic harm.

109. Plaintiffs trusted Wyndham due to Defendants' knowledge and position in the timeshare industry.

110. Defendants betrayed Plaintiffs' trust.

111. Plaintiffs would not have purchased the Wyndham timeshare properties/points had they been privy to all of the material facts and information surrounding a Wyndham timeshare properties/points purchase.

112. Plaintiffs have been damaged because of Defendants' conduct.

113.    Plaintiffs just recently discovered that these material facts were fraudulently suppressed and concealed by Defendants.

114.    As a result of Defendants fraud, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs seek compensatory and punitive damages, interest, costs and trial by jury on all issues triable. Plaintiffs pray for such other and further relief this Court deems appropriate.

## COUNT II

## FRAUDULENT MISREPRESENTATION

115.    Plaintiffs repeat and re-aver the allegations in paragraphs 1 through 96 as if fully set forth herein.

116.    As detailed above, Defendants made material false representations to Plaintiffs regarding timeshare and timeshare contract terms and conditions.

117.    Defendants made material false representations and omissions to Plaintiff regarding the maintenance fees and other costs and assessments arising from the timeshare properties/points sold to Plaintiff.

118.    Plaintiffs were induced to purchase the Wyndham timeshare properties/points because of Defendants' false and misleading representations.

119.    Without the benefit of the truth, Plaintiffs reasonably acted to their detriment.

120.    Plaintiffs trusted Wyndham due to Defendants' knowledge and position in the timeshare industry.

121.    Defendants betrayed Plaintiffs' trust.

122.    These representations made by Defendants were false, and Defendants knew or should have known they were false when making such misrepresentations.

123.    Plaintiffs reasonably relied upon Defendants' false representations to their detriment.

124.    Defendants made these misrepresentations intentionally, recklessly, and/or negligently.

125.    Defendants knew the misrepresentations were false at the time they were made.

126.    Defendants made the misrepresentations to induce Plaintiffs to purchase timeshare properties/points.

127.    Defendants made the misrepresentations to gain a financial benefit.

128.    Plaintiffs just recently discovered the full extent of the falsity of these representations and the true intent of Defendants.

129.    Plaintiffs have suffered damages because of Defendants' actions.

130.    Defendants concealed the falsity of such representations.

131.    Defendants concealed their strategy to dilute the timeshare's exchange rates and purchasing power.

132.    Because of this concealment, Plaintiffs just recently discovered the full extent of the falsity of these representations and the true intent of Wyndham.

133.    As a result of Defendants fraudulent misrepresentation, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs seek compensatory and punitive damages, interest, costs and demand trial by jury on all issues so triable. Plaintiffs pray for such other and further relief this Court deems appropriate.

## COUNT III

## FRAUDULENT INDUCEMENT

134.    Plaintiffs repeat and re-aver the allegations in paragraphs 1 through 96 as if fully set forth herein.

135.    Defendants' misrepresentations, set forth in Count II above, induced Plaintiffs to purchase timeshares from Defendants.

136.    Plaintiffs reasonably relied on Defendants' misrepresentations to Plaintiffs' detriment.

137.    Plaintiffs have suffered damages as a result.

138.    Plaintiffs just recently discovered the full extent of the falsity of these representations and the true intent of Wyndham.

139.    Plaintiffs' reliance on Defendants' statements was reasonable under the circumstances.

140.    Plaintiffs had the right to rely on the statements made by Defendants.

141.    Because of their reasonable reliance, Plaintiffs entered into the timeshare contracts with Wyndham and have been injured as a result.

WHEREFORE, Plaintiffs seek compensatory and punitive damages, interest, costs, and demand trial by jury on all issues triable. Plaintiffs pray for such other and further relief this Court deems appropriate.

## COUNT IV

## MISREPRESENTATION BY CONCEALMENT

142.    Plaintiffs repeat and re-aver the allegations in paragraphs 1 through 96 as if fully set forth herein.

143.    Defendants' actions described above constitute fraudulent concealment.

144.   Defendants took affirmative action to conceal or remain silent and failed to disclose material facts to Plaintiffs despite their duty to do so.

145.   Plaintiffs could not have discovered this fraud despite exercising reasonable care and diligence.

146.   Defendants were aware of their wrongdoing.

147.   Defendants actively concealed material information from Plaintiffs.

148.   Defendants concealed or suppressed material facts from Plaintiffs.

149.   Defendants were under a duty to disclose the facts to Plaintiffs.

150.   Defendants had superior knowledge of the timeshare industry while dealing with Plaintiffs.

151.   Defendants knew of material facts relating to the substance and purchase of the timeshare sold to Plaintiffs.

152.   Defendants knew that these material facts were neither known nor readily accessible to Plaintiffs.

153.   Plaintiffs were reasonable to trust and have confidence in the integrity and fidelity of Defendants.

154.   Defendants intentionally concealed or suppressed the facts with the intent to deceive Plaintiffs.

155.   Plaintiffs were not aware of the facts and would have acted differently if Plaintiffs knew of the concealment or suppressed facts.

156.   Because of the concealment or suppression of fact, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs seek compensatory and punitive damages, interest and costs and demand trial by jury on all issues so triable. Plaintiffs pray for such other and further relief this Court deems appropriate.

## COUNT V

## NEGLIGENT MISREPRESENTATION

157.   Plaintiffs repeat and re-aver the allegations in paragraphs 1 through 96 as if fully set forth herein.

158.   Defendants were acting in the course of their business.

159.   During the dealings with Plaintiffs, Defendants negligently supplied false information.

160.   Defendants intended the information to guide Plaintiffs in Plaintiffs' business transaction.

161.   Plaintiffs justifiably relied upon the false information.

162.   As a result, Plaintiffs suffered a financial loss.

163.   Plaintiffs relied upon Defendants' representations during the sale of the timeshares.

164.   Plaintiffs would not have entered into the transactions without Defendants' representations.

165.   Defendants' representations substantially influenced Plaintiffs' purchase of the timeshare.

166.   Wyndham's sales agents and employees, acting in the course and scope of their employment or service, and motivated by their pecuniary interest in making a

commission from selling Plaintiffs timeshare properties/points, supplied false information to Plaintiffs.

167.    Such false information supplied by Wyndham's sales agents and employees, including John Does 1-100, was meant to guide and/or manipulate Plaintiffs in deciding to purchase a Wyndham timeshare.

168.    Wyndham's sales agents and employees, including Defendants John Does 1-100, failed to exercise reasonable care in how such information was obtained, or how such information was communicated to Plaintiffs.

169.    Plaintiffs were justified in relying on the information being supplied by Wyndham and John Does 1-100.

170.    Defendants had a duty to act with reasonably prudent care in the administration of Plaintiffs' vacation ownership.

171.    Defendants had a duty to completely and accurately report material information to Plaintiffs in their dealings with Plaintiffs.

172.    Defendants breached these and other duties to Plaintiffs.

173.    Wyndham, its agents and employees, including Defendants John Does l-100, falsely represented to Plaintiffs the nature, extent, qualities, or characteristics of the timeshares being purchased by Plaintiffs.

WHEREFORE, premises considered, Plaintiffs seek compensatory and punitive damages, interest and costs and demand trial by jury on all issues so triable. Plaintiffs pray for such other and further relief this Court deems appropriate.

## COUNT VI

## VIOLATION OF THE TENNESSEE TIMESHARE ACT

174.   Plaintiffs repeat and re-aver the allegations in the foregoing paragraphs 1 through 96 as if fully set forth herein.

175.   Defendants operate a multisite timeshare plan in which the purchaser purchases an interest as defined by The Tennessee Time-Share Act Tennessee Code Annotated, 66-32-101 et. seq.

176.   As described above, the actions of Defendants have violated and continue to violate the Tennessee Time-Share Act.

177.   At all relevant times, Defendants were developers, sellers, and/or managing entities of a timeshare plan under the Tennessee Time-Share Act.

178.   The Tennessee Time-Share Act specifically prohibits misleading oral statements from being made in a timeshare sales presentation.

179.   Defendants made numerous oral misrepresentations to Plaintiffs, as described above

180.   Defendants used the misrepresentations and omissions to induce Plaintiffs into signing the timeshare contracts.

181.   These misrepresentations were false, Defendants knew or should have known them to be false, and the misrepresentations were made for Defendants' financial gain.

182.   Plaintiffs reasonably relied on the foregoing misrepresentations, reassurances, and omissions by Defendants, which induced Plaintiffs into purchasing timeshare properties/points from Defendants.

183.   Plaintiffs would not have entered into the purchase agreements but for these misrepresentations.

184.   Defendants continue to breach the agreements with Plaintiffs.

185.   Plaintiffs have employed the undersigned attorneys to represent them and are obligated to pay a reasonable fee for their services.

186.   As a direct and proximate result of Defendants' foregoing violations of the Tennessee Time-Share Act, Plaintiffs suffered damages and are entitled to recover damages, including but not limited to compensatory and punitive damages, and reasonable attorneys' fees, from Defendants.

WHEREFORE, Plaintiffs seek compensatory and punitive damages, reasonable attorneys' fees, plus interest and costs and demand trial by jury on all issues so triable. Plaintiffs pray for such other and further relief this Court deems appropriate.

## COUNT VII

## BREACH OF CONTRACT

187.   Plaintiffs repeat and re-aver the allegations in the foregoing paragraphs 1 through 96 as if fully set forth herein.

188.   In the alternative, Plaintiffs aver that Defendants entered into a contract with Plaintiffs containing oral and written promises, obligations and duties.

189.   Plaintiffs paid monetary consideration to Defendants.

190.   Defendants had a duty to meet the promises and obligation per the oral and written contracts.

191.   As outlined above, Defendants breached those duties to Plaintiffs.

192.   Plaintiffs suffered monetary damages as a result of Defendants breaches.

WHEREFORE, Plaintiffs seek compensatory and punitive damages, plus interest and costs and demand trial by jury on all issues so triable.  Plaintiffs pray for such other and further relief this Court deems appropriate.

## COUNT VIII

## ACTION FOR UNJUST ENRICHMENT

193.    Plaintiffs repeat and re-aver the allegations in the foregoing paragraphs 1 through 96 as if fully set forth herein.

194.    Defendants received monetary benefit from Plaintiffs without consideration.

195.    Defendants have failed or refused to return the monies paid to Defendants.

196.    Defendants would be unjustly enriched by keeping the monies received from Plaintiffs and Defendant has failed to provide Plaintiff with any consideration or value for same.

WHEREFORE, Plaintiffs respectfully requests this Court to enter judgment against Defendants for damages, interest and costs and for such other and further relief as justice may require.  Plaintiffs pray for such other and further relief this Court deems appropriate and demand trial by jury on all issues so triable.

## COUNT IX

## CONTRACT OF INDEFINITE DURATION

197.    Plaintiffs repeat and re-aver the allegations in the foregoing paragraphs 1 through 96 as if fully set forth herein.

198.    The contract for requiring the continuous payment of maintenance fees by Plaintiffs is a perpetual contract.

199.    Florida law disfavors perpetual contracts and holds that they are to be avoided unless there is a clear manifestation that the parties intended the contract to be perpetual.

200.    The contracts signed by Plaintiffs do not manifest an intention that the

contractual obligations shall last in perpetuity.

201.    The contracts signed by Plaintiffs express no time period or duration for Plaintiffs'

obligation to pay maintenance fees.

202.    No definite time for Plaintiffs' contractual obligation to pay maintenance fees can

be 'implied from the contracts' nature or the surrounding circumstances.

203.    Florida law holds that in the absence of an explicit agreement as to date of

termination, the contract is terminable at will by either party.

WHEREFORE, Plaintiffs would request that the Court hold that the contracts at

issue in this Complaint are of an indefinite duration and terminable at will by either party.

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS RESPECTFULLY REQUEST THE FOLLOWING:

1.    That Plaintiffs be awarded compensatory and punitive damages;

2.    That Plaintiffs' attorneys be awarded a reasonable amount in attorneys' fees;

3.    That all discretionary costs be awarded to Plaintiffs;

4.    That the costs of this cause be taxed to Defendants;

5.    That injunctive relief be issued against Defendants;

6.    That declaratory relief be issued against Defendants; and

7.    For such other and general relief, the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of twelve members of each count of the
Complaint so triable.

/s/ George H. Rieger II

GEORGE H. RIEGER II
BRP No. 16273
The Rieger Firm
1506 Lipscomb Drive
Brentwood, Tennessee 37027
Email: chip.rieger@riegerfirm.com
PH:  615-512-0325

Attorney for Plaintiffs